### FERGUSON v. UNITED STATES.

#### No. 9318.

Circuit Court of Appeals, Fifth Circuit.

May 31, 1940.

Harry Preston Lawther, Wm. M. Cramer, and Maury Hughes, all of Dallas, Tex., for appellant.

Joe H. Jones, Asst. U. S. Atty., of Dallas, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant, H. W. Ferguson, was convicted and sentenced for violating and conspiring to violate 12 U.S.C.A. § 984. It will suffice to examine the substantive offenses. The indictment in separate counts charges that Ferguson, being president of the Dallas Joint Stock Land Bank. did unlawfully, wilfully, knowingly and feloniously abstract and convert to his own use monies belonging to said Bank, with intent to deprive the Bank of the value thereof, towit: $2,400 on April 28, 1937; $500 July 28, 1937; $3,296 November 9, 1937; $514 September 1, 1937; all said monies being derived from a tract of land conveyed for the benefit of the Bank by Carrie Berkman to one Fowler.

Many of the facts are undisputed. Ferguson had been the Bank's president for many years, and exercised almost complete control over its business. The Bank held a note of Carrie Berkman secured by mortgage on her farm in Nueces County, Texas. She offered to surrender the land for the debt. Ferguson declined the offer. On March 17, 1937, she offered to the Bank's attorney to pay $1,000 and surrender the land for the debt. The Bank's attorney on Ferguson's authority offered to accept the $1,000 and release Mrs. Berkman from personal liability provided the note and lien securing it should remain in full force and effect, the land to be conveyed to Fowler subject to the note and mortgage. This offer was accepted and papers made accordingly, the deed to Fowler dated March 30, 1937, and release of Mrs. Berkman dated April 9, 1937. Fowler was a farmer living near the land. He did not at first know of the transaction, but later was told and acted as transferee by signing the papers requested of him by Ferguson, through Ferguson's wife's brother Craddock, who was field agent for the Bank. The deed to

134

Fowler did not name him as agent or trustee for anyone. The main issue of fact in the case is whether he as "nominee" was the agent or trustee for the Bank, used for the purpose of holding the land for the Bank without merger of the mortgage, or was the agent or trustee for Ferguson or Ferguson's wife. The Bank had taken over several hundred farms, and wished no more; and had often had them deeded to some clerk subject to the mortgage debt, with the idea of reselling to someone who would assume the debt and reinstate the loan. When a purchaser could not be found, the clerk would convey title to the Bank, which would close the loan record and put the land in its real estate account. According to the testimony of the Bank's attorney this was what was being done in the Berkman case. According to Ferguson the Bank was to credit the $1,000 paid by Mrs. Berkman for her release, and retain the balance of the loan as its investment, Fowler taking title subject to the loan for the benefit of Ferguson's wife, Ferguson and her brother Craddock thinking it would likely be profitable to her, and this being well understood by the Bank's attorney. Certain it is that on April 28, 1937, an oil lease was placed on the land for which Ferguson got $2,400, which he put to his wife's credit in a San Antonio bank. On April 29, 1937, he drew checks on another bank account of his wife for over $1,200 to pay arrearages of taxes on the land and interest on the loan, putting the loan into good standing. In July the farm was sold to a purchaser who assumed the mortgage and paid $500 down, which Ferguson put to his wife's credit. The rent on the land for 1937, $514, was collected in the fall and put by Ferguson to his wife's credit. The purchaser paid $3,296 in November which went the same way. The Bank's loan was paid in full by the purchaser in January, 1938.

■ The Bank thus got all it was ever entitled to under its mortgage. If the oil lease bonus, the rents, and the profit on resale which arose from the land were the Bank's monies, it must be because the transaction in March with Mrs. Berkman made the Bank the owner of the land. If Fowler had received title for himself or someone else not connected with the Bank, these monies would not have been monies of the Bank. If the Bank had acted by some other officer who permitted Ferguson to take over the land for his wife through Fowler, the monies would have been hers. Because Ferguson was acting as the officer and agent of the Bank and at the same time for himself and wife, taking for her benefits which might have been secured for the Bank, the case is close. If, as the Bank's attorney testifies, Ferguson at first took the land for the Bank in Fowler's name, and later decided to advance his wife's money and take the land for her, his act in her behalf against the Bank would not be valid, the Bank's equitable ownership of the land and its proceeds would not cease, and in abstracting the proceeds of the land he would abstract the money of the Bank to its loss. But if in the beginning he acted for his wife in having title put in Fowler, having already for the Bank decided in good faith that the Bank did not wish and would not take the land but would retain only its loan, the land and its proceeds would not be the Bank's. It is, however, true that even then the Bank could, at its election, hold its officer and agent liable in equity for any profits he made in thus dealing personally in a matter in which he should have dealt for the Bank alone; but until the election was made and an account demanded, Ferguson could receive and keep the money without violating this statute. His guilt depends on whether the land became the land of the Bank in March, 1937; and if so, on whether Ferguson wilfully and knowingly abstracted monies, the proceeds of the land and belonging to the Bank, with intent to deprive the Bank of them. On all the evidence Ferguson was not entitled to an instructed verdict in his favor.

■ But we think the court, impressed with Ferguson's accountability in equity as an agent and fiduciary of the Bank, erroneously made and refused charges on the critical question. In stating the uncontroverted facts he said: "That instead of conveying the land directly to the Bank they conveyed it to a person to be named by the Bank, called a nominee for the Bank. That nominee was S. K. Fowler." Thus in the very beginning the jury were told in effect that Fowler took for the Bank and not for Ferguson. Later he said of Fowler: "He was either the nominee, or in a sense trustee, for the equity or the profits that might flow from the

land, either for the Bank or for the defendant Ferguson. Somebody had to constitute him trustee. He could not arrogate that to himself without his consent, or without his knowledge. The defendant Ferguson was without power to take anything that was the Bank's and name somebody as trustee to hold it for him personally." The last sentence, while true of anything that was really the Bank's, would be understood, in the connection in which it was spoken, as meaning that the land before it was deeded to Fowler was the Bank's, and Ferguson was therefore without power to make Fowler his trustee. At another place the jury were told that "Ferguson was the president of Joint Stock Land Bank, as such he was entrusted with the funds of that bank in a similar sense that a guardian is entrusted with the funds of his ward. Under the law of the land a guardian cannot trade with the ward, whether he be a minor or non compos mentis. And in this case the defendant Ferguson was trustee of this money, if it belonged to the Bank." It is not clear whether the court was speaking of the money loaned to Carrie Berkman, or that realized later from the sale of the land. The comparison of Ferguson's position to that of a guardian is not apposite, for the latter is absolutely prohibited by statute from purchasing his ward's property. Texas Rev.Stats. Art. 4205. And lastly, the jury after considering the case, returned into court and asked: "Did Ferguson, acting as trustee for the Bank, have the right to convey this property to his wife through S. K. Fowler?" The judge answered: "The defendant Ferguson acting as trustee for the Bank did not have the right to convey the property to his wife. He did have the right, if the property was his, to give it to his wife, or convey it to her, but he did not have the right as trustee for the Bank to do so." If "the property" meant the monies, the instruction was right. If it meant the land at the time Fowler received it, it was wrong as applied to this case. We think it likely the jury intended it to mean the land, and thought the case ruled by the judge's answer, for they soon made a verdict. While the charge in other parts of it submitted the vital issues to the jury, we think the parts of it we have criticised obscured them, and tended to impress the jury with the idea that Ferguson's position of trust prevented any possibility of the land and the monies arising from it belonging to anyone but the Bank.

The judgment is reversed and the cause remanded for further proceeding not inconsistent with this opinion.